The appellant, James McConico, Jr., currently an inmate at the St. Clair Correctional Facility, appeals the circuit court's dismissal of his petition for a writ of certiorari.
On July 30, 2003, while an inmate at the William E. Donaldson Correctional Facility, McConico petitioned the Montgomery Circuit Court for a writ of certiorari. The petition challenged the decision of the Department of Corrections ("DOC") to upgrade McConico's custody classification and his resulting transfer to another prison facility. McConico sought relief because, he alleged, his due-process rights were violated by DOC's refusal to conduct a full and fair reclassification hearing. He further alleged that the basis for his reclassification — namely, "an inability to abide by the rules and regulations of the DOC" — was pretextual. According to McConico's petition, DOC's real motives for reclassifying him were: (1) to prevent him from practicing his "Islamic faith"; (2) to prevent him from developing "the Islamic Community at W.E. Donaldson Correctional Facility"; (3) to prevent him from assisting other inmates with their legal matters; and (4) to prevent him from instructing other inmates in the law and on how to proceed in their legal matters. On October 28, 2003, DOC filed a motion to dismiss McConico's petition, arguing that McConico had received all of the due-process rights mandated by Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963,41 L.Ed.2d 935 (1974). Included in DOC's response were copies of the reclassification report. The circuit court summarily dismissed the petition, without prejudice, on November 18, 2003. This appeal followed.
McConico argues that the circuit court erred in summarily denying his certiorari petition because, he says, the manner in which his reclassification hearing was conducted violated his due-process rights. However, because McConico appeals from the decision of an administrative agency (DOC), based on that agency's administrative rules and regulations we must first determine whether this Court has the jurisdiction to review McConico's claims.
In 1969, the Alabama Legislature created the Court of Criminal Appeals and the Court of Civil Appeals, from the former Court of Appeals. See § 12-3-1, Ala. Code 1975. The appellate jurisdiction of each of the newly created courts was established by statute. This Court's appellate jurisdiction is set out in § 12-3-9, Ala. Code 1975, which states:
 "The Court of Criminal Appeals shall have exclusive appellate jurisdiction of all misdemeanors, including the violation of town and city ordinances, habeas corpus and all felonies, including all post conviction writs in criminal cases."
Additionally, § 6.03(a) of Amendment No. 328, Ala. Const. of 1901, states that this Court shall "exercise" its appellate jurisdiction *Page 579 
"under such terms and conditions as shall be provided by law and by rules of the supreme court."
When § 12-3-9 was enacted, the Alabama Rules of Criminal Procedure had not yet been adopted; they were adopted effective January 1, 1991.[1] Therefore, the only post-conviction remedy available for a criminal defendant was by filing a petition for a writ of error coram nobis. See, e.g., Mayola v.State, 337 So.2d 105 (Ala.Crim.App.), cert. denied,337 So.2d 107 (Ala. 1976) (recognizing the writ of error coram nobis as a means of postconviction review). Thus, our jurisdiction to review postconviction writs generally involves the review of Rule 32, Ala.R.Crim.P., petitions for postconviction relief, the successor to the petition for writ of error coram nobis. The one exception to this general rule is this Court's review of certiorari petitions of inmates challenging the decision of the Alabama Board of Pardons and Paroles. However, as both this Court and the Court of Civil Appeals have recognized, the Board of Pardons and Paroles is a legislative agency, rather than an administrative agency.[2] See Ex parte Alabama Bd. of Pardons Paroles,849 So.2d 255 (Ala.Crim.App. 2002); Gholston v. Board of Pardons Paroles, 627 So.2d 945 (Ala.Civ.App. 1993).
By contrast, the writ of habeas corpus was traditionally not available until an inmate was entitled to immediate release. See, e.g., Aaron v. State, 497 So.2d 603 (Ala.Crim.App. 1986) (citing Ex parte Miller, 54 Ala.App. 590, 591, 310 So.2d 890
(1975)). In 1980, however, the Alabama Supreme Court held that a petition for writ of habeas corpus was the proper method by which an inmate could challenge a disciplinary hearing depriving him or her of good time credit even if the inmate would not be entitled to immediate release upon restoration of the good time. Williamsv. Davis, 386 So.2d 415 (Ala. 1980). Following the Alabama Supreme Court's decision in Williams v. Davis, this Court gradually recognized the use of a petition for a writ of habeas corpus by an inmate to challenge DOC decisions involving not only the loss of good-time credit, but as a method by which the inmate could determine whether DOC had correctly calculated the amount of time he was required to serve, see, e.g., Swicegood v.State, 646 So.2d 158 (Ala.Crim.App. 1993), as well as other matters that directly or indirectly affected the time that an inmate was required to remain in DOC's custody, such as a challenge to an administrative rule involving custody classification or the right to earn incentive good time. Implicit in our decisions was the acknowledgment that this Court was better suited to review such matters, while leaving challenges involving the conditions of confinement to be reviewed on appeal by the Court of Civil Appeals.
However, in Ex parte Boykins, 862 So.2d 587 (Ala. 2002), the Alabama Supreme Court rejected this practice, holding that an inmate's challenge to an administrative rule addressing his right to earn incentive good time was not cognizable by petition for a writ of habeas corpus. That court held that because Boykins had *Page 580 
no due-process liberty interest in DOC's ruling on his request to qualify for incentive good time, the circuit court and this Court had incorrectly treated Boykins's petition as one for a writ of habeas corpus. The Supreme Court noted that because Boykins was appealing the decision of an administrative agency,[3]
i.e., DOC, made pursuant to that agency's rules and regulations, he was required to petition the circuit court for a writ of certiorari because the Alabama Administrative Procedure Act did not provide for any other appeal mechanism for inmates. 862 So.2d at 593. Accordingly, the Supreme Court reversed this Court's judgment and remanded Boykins's case to this Court with directions that this Court "reverse the judgment of the trial court and remand the cause for the trial court to review Boykins's petition for a writ of certiorari reviewing the DOC's denial of his request to be allowed to earn IGT [incentive good time]." 862 So.2d at 594. On remand, this Court reversed the judgment of the Bullock Circuit Court. However, we noted:
 "[B]ecause the Supreme Court determined that Boykins's petition challenging the denial by the Department of Corrections (`DOC') of his request to earn incentive good time was improperly treated as a petition for a writ of habeas corpus, rather than as a petition for a writ of certiorari, the Bullock Circuit Court no longer has jurisdiction to determine the merits of Boykins's petition. A petition for writ of habeas corpus is properly filed in the circuit court nearest to where the petitioner is incarcerated. See § 15-21-7, Ala. Code 1975. However, a petition for writ of certiorari against an administrative agency, in this instance, DOC, should be filed in `the Circuit Court of Montgomery County or in the circuit court of the county in which the agency maintains its headquarters.' § 41-22-20(b), Ala. Code 1975. See also § 6-3-9, Ala. Code 1975. Because DOC maintains its headquarters in Montgomery County, Boykins's petition should have been filed in Montgomery County. See Pinkard v. State, 859 So.2d 449 (Ala.Crim.App. 2003); Cox v. State, 628 So.2d 1075 (Ala.Crim.App. 1993). Accordingly, on remand the Bullock Circuit Court should transfer Boykins's petition to Montgomery Circuit Court so that that court may properly determine the merits of Boykins's certiorari petition. Finally, we note that should an appeal be taken from the Montgomery Circuit Court's judgment, the appeal should be filed with the Court of Civil Appeals, because Boykins's case would be an appeal from an administrative agency, see § 12-3-10, Ala. Code 1975, rather than an appeal from a postconviction writ in a criminal case."
Boykins v. State, 862 So.2d 594, 595 (Ala.Crim.App. 2003).
Here, just as in Boykins, McConico is appealing a circuit court's decision on a petition for a writ of certiorari challenging a decision of an administrative agency. However, unlike in Boykins,[4] McConico's certiorari petition challenged a custody reclassification based on conduct that occurred while he was an inmate. Thus, while this Court did not have jurisdiction to review an appeal from the denial of Boykins's certiorari petition, we do have jurisdiction to review McConico's appeal because McConico's petition falls within the exception set out in § 41-22-3(9) g.1., *Page 581 
Ala. Code 1975 (exempting from the definition of "rule" any actions relating to "[t]he conduct of inmates of public institutions and prisoners on parole").[5]
Having determined that this Court has jurisdiction to review McConico's appeal, we now turn to the merits of McConico's claims. McConico argues that his due-process rights were violated because, he says, his reclassification hearing was held in separate phases. As a result, he argues, the reclassification board was comprised of different members during the two phases of his hearing. Accordingly, not all of the reclassification board members heard all of the evidence presented before making their findings.
It has long been recognized that prison inmates do not have a liberty interest in a particular security classification. Moodyv. Daggett, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). Likewise, an inmate has no federally created liberty interest in remaining in a particular prison or a particular unit within a prison. Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741,75 L.Ed.2d 813 (1983); Montanye v. Haymes, 427 U.S. 236,96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); Meachum v. Fano, 427 U.S. 215,96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). "`[B]ecause no liberty interest was involved in the deprivations suffered by the appellant, the protections described in Wolff [v. McDonnell,418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974),] were not triggered.'" Washington v. State, 690 So.2d 539, 540
(Ala.Crim.App. 1997) (quoting Dumas v. State, 675 So.2d 87, 89
(Ala.Crim.App. 1995)). Additionally, as this Court has recognized, "the classification system used by the Alabama prison system contains no inherent constitutional invalidity, but becomes constitutionally offensive only if `the regulation is administered maliciously or in bad faith.'" Hill v. State,594 So.2d 246, 248 (Ala.Crim.App. 1992) (quoting Hendking v. Smith,781 F.2d 850, 852 (11th Cir. 1986) (holding that regulation denying sex offenders minimum security status did not violate the Equal Protection Clause)).
Based on our review of the record, McConico has failed to show maliciousness or bad faith on the part of DOC in his reclassification. As part of its motion to dismiss, the State included the affidavit of Stephen Bullard, the warden at Donaldson Correctional Facility at the time McConico was reclassified. Warden Bullard's affidavit stated, in pertinent part:
 "Inmate McConico's behavior indicated that he needed close supervision (Close Custody). While at William E. Donaldson Correctional Facility, inmate McConico could not be placed in population due to his having a documented *Page 582 
enemy in population. . . . Inmates who have documented enemies in an institution must be kept separate for their own safety and to prevent violence.
 "The decision to reclassify inmate McConico was in accordance with Classification policies. At no time [were] inmate McConico's due process [rights] violated."
(C. 19, supplemental record.)
Because there was no evidence indicating that DOC acted maliciously or in bad faith in reclassifying McConico, the circuit court correctly dismissed the certiorari petition. Accordingly, the circuit court's judgment is due to be affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, J., concur. COBB and SHAW, JJ., concur in the result.
[1] Before the adoption of the Alabama Rules of Criminal Procedure, the Supreme Court had adopted Temporary Rules relating to Criminal Procedure. Rule 20 of those temporary rules dealing with postconviction remedies was added effective April 1, 1987.
[2] Given this important distinction, this Court's reliance on a case involving the Board of Pardons and Paroles as authority for a decision involving DOC would be misplaced, because the Alabama Administrative Procedure Act would be inapplicable to decisions involving the Board of Pardons and Paroles. See also § 41-22-3(9)g.1, Ala. Code 1975.
[3] See §§ 14-1-1.2 and 41-22-3(1), Ala. Code 1975.
[4] DOC's denial of Boykins's request to earn incentive good time was based on the severity of the crime for which he was convicted — murder.
[5] Often, DOC's decisions regarding an inmate's right to earn incentive good time or a reclassification of custody are not based on an inmate's conduct. Rather, such decisions are based on the particular crime of which the inmate was convicted. For example, § 14-9-41 prohibits inmates convicted of certain offenses from being eligible for correctional incentive time, regardless of the inmate's conduct while incarcerated. The same is true with regard to an inmate's custody classification. An inmate's custody classification may be determined by the crime of which he was convicted. For example, inmates are classified as "heinous offenders" based not on their conduct while in custody, but on the crime for which they were convicted. An inmate's classification may also relate, at least in part, to DOC's responsibility to keep the inmate safe from known "enemies." Those enemies may be inmates housed within the same prison — requiring a different custody classification. Thus, based on the Supreme Court's holding in Ex parte Boykins, this Court would have jurisdiction to review certiorari petitions challenging DOC actions involving an inmate's conduct, while the Court of Civil Appeals would have jurisdiction to review petitions challenging decisions based on factors other than the inmate's conduct. *Page 1088