BOLIN, Justice.
 

 On August 26, 1999, Joseph W. Hutchinson III, an attorney, was appointed to represent Medell Banks, Jr., an indigent defendant, in a capital-murder case. On May 7, 2001, Banks entered a “best-interest” plea of guilty to manslaughter for the death of his wife’s newborn baby. On June 25, 2001, the trial court sentenced Banks to 15 years’ imprisonment. Banks later moved to withdraw his guilty plea based on newly discovered evidence indicating that his wife could not have been pregnant and bore the child Banks was accused of killing. The trial court denied Banks’s motion to withdraw his plea, and Banks appealed to the Court of Criminal Appeals. On August 9, 2002, the Court of Criminal Appeals held that a manifest injustice had occurred after Banks obtained test results that showed that his wife could not have been pregnant when she was allegedly carrying the child Banks was accused of killing, and it reversed the trial court’s judgment and remanded the cause for the trial court to grant Banks’s motion to withdraw his guilty plea.
 
 Banks v. State,
 
 845 So.2d 9 (Ala.Crim.App.2002). The facts underlying this case are set out in the Court of Criminal Appeals’ opinion. The capital-murder charges against Banks remained pending after Banks withdrew his guilty plea. Eventually, Banks entered a best-interest plea to tampering with physical evidence, a misdemeanor. The capital-murder charge was dismissed. Banks was sentenced to time served.
 

 On December 16, 2008, Hutchinson, who had represented Banks throughout his trial and appellate proceedings, filed two attorney-fee declarations. The first fee declaration was for work completed in the proceedings in the trial court before the appeal to the Court of Criminal Appeals. Hutchinson sought the following in that fee declaration: in-court expenses of $1,635, representing 27.25 hours at $60 an hour; out-of-court expenses of $18,557.60, representing 463.94 hours at $40 an hour; extraordinary expenses approved in advance by the trial court of $3,803.95; and overhead expenses of $17,191.65, representing 491.19 hours at $35 an hour. Hutchinson’s second fee declaration involved work completed after Banks filed his appeal, including: in-court expenses of $2,610, representing 43.50 hours at $60 an hour; out-of-court expenses of $28,046, representing 701.15 hours at $40 an hour; extraordinary expenses approved in advance by the court of $5,143.15; and overhead expenses of $26,062.75, representing 744.65 hours at $35 an hour.
 

 The trial judge who presided over the criminal proceedings against Banks had retired, and a new judge was assigned Hutchinson’s fee declarations. Following a hearing, the trial court reduced Hutchinson’s claims for out-of-court expenses and for overhead expenses for both the trial and appellate proceedings. Hutchinson
 
 *222
 
 filed a notice of appeal to the Court of Criminal Appeals, which transferred the case to this Court.
 

 We are first presented with a jurisdictional question in a proceeding arising from a criminal case. A history of cases addressing appellate jurisdiction in such cases is necessary.
 

 In
 
 Ex parte Galanos,
 
 796 So.2d 390 (Ala.2000), counsel for several indigent defendants in criminal cases, upon conclusion of counsel’s services, sought attorney fees and reimbursement of certain expenses. At that time, Mobile County had a system for reviewing attorney-fee declarations that provided that the responsibility for reviewing all fee declarations rotated among the judges in the circuit on an annual basis. The judge whose responsibility it was that year to review the fee declarations reduced counsel’s attorney-fee declarations. Counsel then filed a petition for a writ of mandamus with the Court of Criminal Appeals challenging Mobile County’s rotation system and challenging the reduction in his fees. The Court of Criminal Appeals ordered that the judges who presided over the defendants’ trials should review the declarations for the cases over which they presided and that Mobile County should revise its system for reviewing attorney-fee declarations. Seven of the judges who heard criminal cases in Mobile County then filed a de novo petition for a writ of mandamus with this Court, arguing that counsel’s petition to the Court of Criminal Appeals was improper because he had another adequate remedy available to him, i.e., filing a declaratory-judgment action. This Court agreed and held:
 

 “The lack of another adequate remedy is a prerequisite to the issuance of a writ of mandamus.
 
 Ex parte Martin,
 
 703 So.2d 883, 884 (Ala.1996). [Counsel] does not deny that a declaratory-judgment proceeding constitutes an available adequate remedy, but argues that had he sought a declaratory judgment and won, the likelihood is that the same issues presented by this mandamus petition would have been presented to this Court in an appeal by the losing party. Had the scenario presented by [counsel] occurred, this Court might have found itself faced with the same legal question; however, a critical difference would have existed: there would have been before this Court a fully developed record from a declaratory-judgment proceeding.
 

 “Section 6-6-223[, Ala.Code 1975,] provides that ‘[a]ny person ... whose rights ... are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder.’ We therefore conclude that [counsel] had an ‘adequate legal remedy’ available by a means other than a writ of mandamus, and that the Court of Criminal Appeals erred in granting [counsel’s] petition. Although at oral argument of this case counsel for the petitioners informed this Court that Mobile’s indigent-defense system has been revised to remedy the problems that were the basis for [counsel]’s original petition to the Court of Criminal Appeals, we emphasize that § 6-6-223 clearly provides [counsel] with ‘another adequate remedy’ and that remedy is not foreclosed to him by the decision in this case.
 

 “We also note that ‘properly invoked jurisdiction’ — the fifth requisite for obtaining mandamus relief — is absent here. Ala. Const.1901, Amend. No. 328, § 6.03 [now § 141, Ala. Const. 1901 (Off.Recomp.) ], establishes the jurisdiction for Alabama’s Courts of Appeals. That section provides, in pertinent part:
 

 
 *223
 
 “ ‘(c) The court of criminal appeals and the court of civil appeals shall have no original jurisdiction except the power to issue all writs necessary or appropriate in aid of appellate jurisdiction of the courts of appeals.
 

 “ ‘(d) The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction; to punish for contempts by the infliction of a fine ..., and to exercise such other powers as may be given to said court by law.’
 

 “Section 12-3-9, Ala.Code 1975, provides that ‘[t]he Court of Criminal Appeals shall have exclusive appellate jurisdiction of all misdemeanors, including the violation of town and city ordinances, habeas corpus and all felonies, including all post conviction writs in criminal cases.’ Clearly, jurisdiction for [coun-selj’s mandamus petition was not proper in the Court of Criminal Appeals.
 

 “On the other hand, § 12 — 8—10[, Ala. Code 1975,] provides that ‘[t]he Court of Civil Appeals shall have exclusive appellate jurisdiction of all civil cases where the amount involved, exclusive of interest and costs, does not exceed $50,000 ... and all extraordinary writs arising from appeals in said cases.’ Thus, after litigation in the circuit court, a judgment in a declaratory-judgment action may be appealed to the Court of Civil Appeals.”
 

 796 So.2d at 392-93.
 

 In
 
 Ex parte Smith,
 
 794 So.2d 1089 (Ala.2001), the defendant, who was indigent and charged with capital murder, sought copies of a videotaped confession he had made to police officers at the time of his arrest, a videotape the police had made of the crime scene, and a compact disc on which the police had stored digital photographs of the crime scene. The State granted the defendant’s attorneys unlimited access to the videotapes and the compact disc. The State also agreed to furnish the attorneys with copies of the videotapes and the compact disc on the condition that the attorneys pay the police in advance for the costs of copying them. The defendant’s attorneys moved the circuit court to order the State to furnish them the copies free of charge. The circuit court entered an order directing the police to make copies of the videotapes and the compact disc and to furnish those copies to the defendant’s attorneys together with a statement for the copying charges. The circuit court’s order further stated that, at the conclusion of the criminal proceeding against the defendant, the circuit court would order the payment of the copying charges from the Fair Trial Tax Fund. The State then petitioned the Court of Criminal Appeals for a writ of mandamus ordering the circuit court to vacate its order and to issue a new order directing the defendant’s attorneys to pay in advance for its costs in copying the videotapes and compact disc and to obtain reimbursement later in accordance with § 15-12-21, Ala.Code 1975. The Court of Criminal Appeals issued the writ.
 

 The defendant then petitioned this Court for a writ of mandamus ordering the Court of Criminal Appeals to vacate its writ. Quoting
 
 Galanos,
 
 supra, this Court held that the Court of Criminal Appeals did not have jurisdiction to entertain the defendant’s mandamus petition and then stated:
 

 “The Court of Criminal Appeals has no jurisdiction to hear mandamus peti
 
 *224
 
 tions related to matters not appealable to that court.
 
 Galanos.
 
 Thus, the State’s petition to the Court of Criminal Appeals was defective because of the absence of a prerequisite for a writ of mandamus: ‘properly invoked jurisdiction.’
 
 Id.
 
 (and cases cited therein).”
 

 794 So.2d at 1093. Justice Johnstone issued a special writing, concurring in the judgment but dissenting from the rationale, stating:
 

 “I will summarize my rationale. The production order issued by the Circuit Court for Montgomery County was right, first because the State did not timely oppose it, and second because it followed the constitutional requirements for due process. However, the State’s petition to the Court of Criminal Appeals for a writ of mandamus was the proper vehicle for review of the circuit court order. A declaratory judgment action filed in the circuit court would not have been a valid vehicle to review the circuit court order inasmuch as the circuit court itself would have been the only correctly identifiable entity to name as the defendant: for the order signed by the trial judge was not the order of that judge but was, rather, the order of the circuit court itself. The State could not sue the circuit court in the circuit court.
 

 “Notwithstanding the holding of
 
 Ex parte Galanos,
 
 796 So.2d 390 (Ala.2000), in which I could not participate, the Court of Criminal Appeals did have jurisdiction to entertain the petition for writ of mandamus. This jurisdiction was conferred by Amendment 328, § 6.03 [now § 141, Ala. Const. 1901 (Off.Recomp.) ], Alabama Constitution of 1901, which provides, in pertinent part, that the Court of Criminal Appeals has original jurisdiction ‘in the issuance and determination of writs of ... mandamus in relation to matters in which said court has appellate jurisdiction.’ This capital murder case was a ‘matter[] in which said court has appellate jurisdiction,’ and the dispute over this circuit court production order at issue was ‘in relation to’ that very matter. The error of the Court of Criminal Appeals was not in exercising jurisdiction but rather was in issuing the writ of mandamus directing the trial court to vacate its production order, which was, as I have already mentioned, a valid production order. Because the Court of Criminal Appeals erred in this respect, I concur in the judgment of this Court to issue a writ of mandamus to the Court of Criminal Appeals and thereby to direct that court to vacate its writ of mandamus issued to the trial court.”
 

 794 So.2d at 1093-94.
 

 Ex parte McNabb,
 
 879 So.2d 1166 (Ala.2003), involved the question which appellate court was the appropriate court to entertain a mandamus petition asking the appellate court to vacate a circuit court’s order denying a pretrial motion for expenses to allow an indigent defendant to obtain a copy of the transcript in his original trial, which had ended in a mistrial. This Court, distinguishing earlier decisions regarding appellate jurisdiction, held that the Court of Criminal Appeals had jurisdiction, stating:
 

 “[T]his Court, in
 
 Ex parte Smith,
 
 794 So.2d 1089, 1093 (Ala.2001), applying the rationale of
 
 Ex parte Galanos,
 
 796 So.2d 390, 393 (Ala.2000), held, under the circumstances presented there, that the Court of Civil Appeals was the proper appellate court to issue a writ of mandamus addressing the payment of a defense counsel’s fees because the matters in issue were not appealable to the Court of Criminal Appeals.
 
 Smith,
 
 794 So.2d at 1093. In
 
 Galanos,
 
 counsel for
 
 *225
 
 several indigent defendants in criminal cases, upon conclusion of his services, applied for payment of attorney fees and for reimbursement of his expenses; he then challenged the trial court’s award of those fees and expenses as inadequate. In
 
 Smith,
 
 the State challenged the trial court’s requirement that copies of discovery materials be furnished to the defendant at the expense of the State and contended that counsel should pay in advance and obtain reimbursement later, in accordance with Ala.Code 1975, § 15-12-21. In both
 
 Galanos
 
 and
 
 Smith
 
 this Court held that the Court of Criminal Appeals lacked jurisdiction in those cases. Also, in both
 
 Galanos
 
 and
 
 Smith
 
 the issues did not implicate the defendants’ right to a fair trial. In
 
 Ga-lanos,
 
 the criminal cases were concluded. In
 
 Smith,
 
 the defendant was going to receive a copy of the evidence before trial and the issue was whether counsel would be required to advance the costs of the discovery being turned over before the trial and be reimbursed later or whether the State would pay for the copy of such discovery before it was delivered to the defendant.
 

 “In the posture here presented, the trial court has denied the motion for extraordinary expenses. Presumably, its ruling is simply a refusal to require the State to pay the expense before the trial and does not reach the issue of preapproval of expenses under § 15-12-21(d). Nevertheless, this case differs from
 
 Smith
 
 in that, unlike in
 
 Smith,
 
 we cannot say, at this stage of the proceedings, that McNabb will have access to the requested materials before the trial.
 

 “Amendment No. 328, § 6.03(d) [now § 141(d), Ala. Const. 1901 (Off.Recomp.) ], Ala. Const. 1901, provides:
 

 “ ‘The Court of Criminal Appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction.... ’
 

 “Because the Court of Criminal Appeals has jurisdiction to hear a petition for the writ of mandamus ‘in relation to matters in which said court has appellate jurisdiction’ (§ 6.03), and because the right of a defendant to a fair trial if the requested transcript is not available is an issue as to which that court has appellate jurisdiction, the Court of Criminal Appeals has jurisdiction to deal with the issue presented in McNabb’s petition filed before it. Whether there is any merit in the petition or whether appeal is an adequate remedy is a matter we do not address.”
 

 879 So.2d at 1168-69.
 

 In
 
 State v. Isbell,
 
 985 So.2d 446 (Ala.2007), the defendant pleaded guilty in the district court to driving under the influence and to failing to yield the right of way. Subsequently, he appealed to the circuit court for a trial de novo. The defendant filed several discovery motions concerning the device used to test his breath for alcohol content. After a hearing, the circuit court granted the request. The district attorney filed a petition for a writ of mandamus in the Court of Criminal Appeals. The Court of Criminal Appeals transferred the petition to the Court of Civil Appeals, reasoning that it lacked jurisdiction over the petition because the defendant’s right to a fair trial was not implicated. The Court of Civil Appeals
 
 *226
 
 transferred the petition back to the Court of Criminal Appeals, reasoning that the petition involved a discovery issue within the jurisdiction of the Court of Criminal Appeals. The Court of Criminal Appeals petitioned this Court to accept the transfer of the case to resolve the jurisdictional issue.
 

 In
 
 Isbell,
 
 we held that the appropriate forum for resolving a question concerning a petition for an extraordinary writ arising from a pending criminal proceeding is the Court of Criminal Appeals. We discussed
 
 Galanos, Smith,
 
 and
 
 McNabb
 
 in our analysis. We stated:
 

 “Justice Johnstone [in his special writing in
 
 Ex parte Smith
 
 ] was correct in that, at the time the petition was pending in
 
 Ex parte Smith,
 
 there was an ongoing criminal prosecution and any appeal would go to the Court of Criminal Appeals. Consequently,
 
 Ex parte Smith
 
 involved the issuance of a writ of mandamus in relation to a matter as to which the Court of Criminal Appeals had appellate jurisdiction. We therefore expressly overrule
 
 Ex parte Smith,
 
 and, in so doing, we hold that the Court of Criminal Appeals was the proper forum for resolution of the dispute made the basis of this mandamus proceeding because there is a pending criminal proceeding and any appeal from that proceeding would be to that court.
 

 “Our holding today does not require us to revisit
 
 Ex parte Galanos
 
 because that case upheld jurisdiction in the Court of Civil Appeals where the dispute related to payment of attorney fees after the criminal proceeding had been concluded. Furthermore, we do not reach a result inconsistent with
 
 Ex parte McNabb,
 
 which also stemmed from a pending criminal proceeding.
 
 McNabb
 
 involved the payment of the transcript of the first trial, which had ended in a mistrial. The Court of Criminal Appeals transferred McNabb’s petition to this Court to determine whether the Court of Criminal Appeals had jurisdiction to issue writs of mandamus addressing the payment of extraordinary expenses. In
 
 McNabb,
 
 we recognized jurisdiction in the Court of Criminal Appeals because the right of a defendant to a fair trial if the requested transcript was not made available implicated an issue as to which that court had appellate jurisdiction. 879 So.2d at 1169.”
 

 985 So.2d at 449. In response to Justice Murdock’s special writing in
 
 Isbell,
 
 we noted that if a question as to the continued vitality of
 
 Galanos
 
 and
 
 McNabb
 
 came before the Court, then Justice Murdock’s special writing indicated that revisiting those cases should be given serious consideration. 985 So.2d at 449 n. 2.
 

 The facts in the present case place this case squarely within the facts and holdings in
 
 Galanos
 
 and
 
 McNabb
 
 and, in accord with Justice Murdock’s special writing in
 
 Isbell,
 
 we revisit the question of appellate court jurisdiction under this fact situation. In his special writing, Justice Murdock wrote, in pertinent part:
 

 “The constitutional and statutory provisions governing the question before us, as well as Justice Johnstone’s stated rationale in
 
 Smith,
 
 admit of no distinction between the circumstances presented in each of the three cases referenced in the main
 
 opinion
 
 —Ex
 
 parte Galanos, Ex parte Smith,
 
 and
 
 Ex parte McNabb,
 
 879 So.2d 1166 (Ala.2003). To the contrary, those provisions and Justice Johnstone’s rationale apply with equal simplicity and force to all of those circumstances.
 

 “Section 12-3-9, Ala.Code 1975, describes the jurisdiction of the Court of Criminal Appeals: ‘The Court of Criminal Appeals shall have exclusive appel
 
 *227
 
 late jurisdiction of all misdemeanors, ... habeas corpus and all felonies, including all postconviction writs in criminal cases.’ Section 12-8-10, Ala.Code 1975, describes the appellate jurisdiction of the Court of Civil Appeals: ‘The Court of Civil Appeals shall have exclusive appellate jurisdiction of all civil eases [falling within certain categories] and all extraordinary writs arising from appeals in said cases.’
 

 “Likewise, the Alabama Constitution and § 12-8-11 give the Court of Criminal Appeals jurisdiction to issue extraordinary writs ‘in relation to matters’ in which that court has appellate jurisdiction. Amendment No. 328, § 6.03, Constitution of Alabama of 1901 (Art. VI, § 141, Official Recompilation of the Constitution of Alabama of 1901), provides, in pertinent part:
 

 “ ‘(c) The court of criminal appeals and the court of civil appeals shall have no original jurisdiction except the power to issue all writs necessary or appropriate in aid of appellate jurisdiction of the courts of appeals.
 

 “ ‘(d) The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus, and such other remedial and original writs ... in matters over which it has exclusive appellate jurisdiction. ...’
 

 “... Consistent with this constitutional provision, § 12-3-11, Ala.Code 1975, provides:
 

 “ ‘Each of the courts of appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Each court shall have authority to grant injunctions and issue ... remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it....’
 

 [[Image here]]
 

 “Despite the foregoing provisions, and even after quoting from them, the Court in
 
 Galanos
 
 proceeded to announce what I respectfully submit is a counterintui-tive conclusion: that a mandamus petition seeking review of a trial court’s order setting attorney fees for defense counsel in a criminal case “was not proper in the Court of
 
 Criminal
 
 Appeals.’ 796 So.2d at 393 (emphasis added). The Court decided that, rather than seeking appellate review in the Court of Criminal Appeals of the Mobile Circuit Court’s order awarding attorney fees ‘in relation to’ a criminal case, defense counsel should have filed a new collateral proceeding asking the same circuit court that had already ruled on his fee request to review its own order by means of a declaratory-judgment proceeding.
 
 Galanos,
 
 796 So.2d at 392-93. Then, according to the
 
 Galanos
 
 Court, if the results of that declaratory-judgment proceeding still are not satisfactory, defense counsel should take an appeal of that decision to the Alabama Court of Civil Appeals, not to the Alabama Court of Criminal Appeals.
 
 Galanos,
 
 796 So.2d at 393.
 

 “In
 
 Smith,
 
 this Court relied on
 
 Gala-nos
 
 to hold that the Court of Criminal Appeals did not have jurisdiction to consider a petition for a writ of mandamus relating to a discovery dispute in a criminal case. In a special writing, Justice Johnstone explained why, as to the jurisdiction issue, the Court got it wrong in
 
 *228
 
 both
 
 Galanos
 
 and
 
 Smith.
 
 Using a simple, straightforward analysis, Justice Johnstone explained (1) why it made no sense to require the petitioner to file a separate declaratory-judgment action in the circuit court in order to obtain a review by the circuit court of its own order, and (2) why he believed the Court of Criminal Appeals clearly did have jurisdiction to entertain the petitions arising out of those criminal cases:
 

 “ ‘A declaratory judgment action filed ■in the circuit court would not have been a valid vehicle to review the circuit court order inasmuch as the circuit court itself would- have been the only correctly identifiable entity to name as the defendant: for the order signed by the trial judge was not the order of that judge but was, rather, the order of the circuit court itself. The State could not sue the circuit court in the circuit court.
 

 “ ‘Notwithstanding the holding of
 
 Ex parte Galanos,
 
 796 So.2d 390 (Ala.2000), in which I could not participate, the Court of Criminal Appeals did have jurisdiction to entertain the petition for writ of mandamus. This jurisdiction was conferred by Amendment 328, § 6.03 [now § 141, Ala. Const. 1901 (Off.Recomp.) ], Alabama Constitution of 1901, which provides, in pertinent part, that the Court of Criminal Appeals has original jurisdiction “in the issuance and determination of writs of ... mandamus in relation to matters in which said court has appellate jurisdiction.” This capital murder case was a “matter[ ] in which said court has appellate jurisdiction,” and the dispute over this circuit court production order at issue was “in relation to” that very matter.’
 

 “794 So.2d at 1093 (Johnstone, J., concurring in the judgment, but dissenting from the rationale).
 
 [4]
 

 “The intent of Justice Johnstone’s separate writing in
 
 Smith
 
 clearly was to explain what he considered to be the errors in the reasoning of the Court in
 
 Galanos,
 
 as well as in
 
 Smith.
 
 Justice Johnstone very clearly explained at least one of the reasons why the procedure announced in
 
 Galanos
 
 — requiring the filing of a declaratory-judgment action in a circuit court to challenge an earlier judgment of that same circuit court— was not a ‘valid vehicle’ by which to review the circuit court’s judgment.
 
 Smith,
 
 794 So.2d at 1093.
 
 [5]
 
 He also took issue with the core premise of
 
 Gala-nos
 
 — that the Court of Criminal Appeals did not have appellate jurisdiction to consider a trial court’s order arising out of a criminal proceeding.
 
 Id.
 

 “Despite Justice Johnstone’s simultaneous criticism of both
 
 Galanos
 
 and
 
 Smith,
 
 the main opinion today relies upon a portion of Justice Johnstone’s rationale to overturn only
 
 Smith,
 
 drawing a distinction between that case and
 
 Galanos
 
 and McNabb.
 
 [6]
 
 I cannot see how the disputes at issue in
 
 Galanos
 
 and
 
 McNabb,
 
 any less than the disputes in
 
 Smith
 
 and in the present case, were not disputes ‘ “in relation to” [the] very matter[s]’ — the criminal cases — from which they arose. To put it another way, I do not see how the three cited cases and the present case are analytically distinguishable from each other for purposes of applying Amendment No. 328 [now § 141], the above-quoted statutory provisions, and Justice Johnstone’s analysis in
 
 Smith.
 

 “The lack of textual or analytical basis for distinguishing between appellate review of questions arising during a criminal case and questions arising after a criminal case is concluded corresponds with the respective institutional responsibilities, experience, and expertise of
 
 *229
 
 the two intermediate courts of appeal. The Court of Civil Appeals is not charged by law with responsibility for, or knowledge of, substantive or procedural criminal law. Its experience is in civil matters and, as an institution, it is ill equipped to assess criminal matters. The Court of Criminal Appeals, on the other hand, is charged by law both with responsibility for and a knowledge of substantive criminal law and criminal proceedings. When it comes to a matter relating to a criminal case, whether it be an issue arising before trial, such as one regarding discovery, or an issue arising only after the entry of a final judgment, such as one regarding a criminal defense counsel’s fee application, it is the Court of Criminal Appeals that, in all common sense and logic, should decide the question. It is the Court of Criminal Appeals that has the experience and expertise in criminal matters to make an informed judgment as to the infinite variety of questions that potentially can arise in relation to criminal proceedings. Cf.
 
 Collins v. Alabama Dep’t of Corrections,
 
 911 So.2d 739, 743-44 (Ala.Crim.App.2004) (Shaw, J., dissenting) (explaining that the ‘Court of Criminal Appeals is well suited to review’ Department of Corrections decisions regarding reclassification of inmates, regardless of whether those decisions turn on factors other than the inmates’ conduct in prison);
 
 Gerthoffer v. Alabama Dep’t of Corrections,
 
 973 So.2d 355, 359 (Ala.Civ.App.2007) (citing § 12-3-9, Ala.Code 1975, describing types of cases over which the Court of Criminal Appeals has jurisdiction, and § 12-3-10, Ala.Code 1975, describing types of cases over which the Court of Civil Appeals has jurisdiction, and ‘agreeing] with and adopting] the well-reasoned arguments set forth by Judge Shaw in his dissent in
 
 Collins
 
 ’);
 
 Lee v. Layton,
 
 51 Ala.App. 298, 301, 285 So.2d 108, 112 (Ala.Civ.App.1973)(‘On the other hand, had the controversy been about an incarceration on a criminal charge or suspected criminal charge or related to a criminal charge in some manner, we would conclude that the appeal from such a habeas corpus proceeding would be in the jurisdictional sphere of the Court of Criminal Appeals.’ ...)
 

 “Consider for example the following potential questions: Under criminal procedural law, did a trial court err to reversal by not allowing the discovery of certain documents? If so, who should be ordered to pay for their production? Is a criminal defendant entitled to a transcript of a prior proceeding that he contends is necessary to allow him to prepare his defense in a pending proceeding? In regard to a fee application, how much time should a criminal defense attorney reasonably have expended on certain tasks? Was the pursuit of a given tactic in preparation for an arraignment or a sentencing hearing reasonable, or even appropriate? How complex and/or novel was, for example, some Fourth Amendment search-and-seizure question, and how many hours in the research of that question, therefore, might reasonably have been justified? The nature of such potential questions highlight the need, at a practical level, for the Court of Criminal Appeals to address the types of matters at issue in all three cases
 
 (Galanos, Smith,
 
 and McNabb) referenced in the main opinion. This need certainly is no less with respect to the latter questions, those relating to fee applications in' criminal cases that would arise upon the conclusion of a criminal case (as did the question in Galanos), than with respect to the former questions, those relating to
 
 *230
 
 discovery and other matters that would arise during a criminal case (as did the questions in
 
 Smith
 
 and
 
 McNabb
 
 ).
 
 [7]
 

 “Based on the foregoing, I concur in the analysis of Part II of the main opinion insofar as it embraces Justice John-stone’s rationale in his special writing in
 
 Ex parte Smith
 
 and, accordingly, overrules that case. I disagree with the analysis of Part II insofar as it suggests that Justice Johnstone’s rationale admits of some distinction as to the circumstances presented in
 
 Ex parte Galanos
 
 and
 
 Ex parte McNabb.
 
 To the contrary, his rationale applies with equal simplicity and force to those circumstances. I believe this Court also should overrule
 
 Ex parte Galanos
 
 and should disavow the reasoning in
 
 Ex parte McNabb.
 

 
 *231
 
 985 So.2d at 454-58 (emphasis omitted).
 

 We agree with Justice Murdock’s reasoning in his well written opinion in
 
 Isbell.
 
 The Court of Criminal Appeals is the appropriate appellate court to review attorney-fee declarations following a criminal proceeding involving an indigent defendant. Awarding attorney fees “in relation to” a criminal case is a matter for the Court of Criminal Appeals. Art. VI, § 141, Ala. Const. 1901 (Off.Recomp.) (previously Amendment No. 328, § 6.03, Ala. Const. 1901). As Justice Murdock noted, when it comes to a matter relating to a criminal case, whether it be an issue arising before trial, such as one regarding discovery, or an issue arising only after the entry of a final judgment, such as one regarding a criminal defense counsel’s fee application, it is the Court of Criminal Appeals that, in all common sense and logic, should decide the question. It is the Court of Criminal Appeals that has the experience and expertise in criminal matters to make an informed judgment as to the infinite variety of questions that potentially can arise in relation to criminal proceedings. Based on the foregoing, we overrule
 
 Ex parte Galanos
 
 and
 
 Ex parte McNabb
 
 to the extent that they conflict with this opinion, and we transfer this appeal to the Court of Criminal Appeals.
 

 APPEAL TRANSFERRED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 [4]
 

 " 4 As between a mandamus proceeding in the Court of Criminal Appeals and a collateral, declaratory-judgment proceeding in the same circuit court that entered the original fee award, I certainly believe Justice John-stone was correct in his conclusion that a mandamus proceeding in the Court of Criminal Appeals was the only proceeding that could be considered appropriate. I would go a step further, however, and ask whether the appropriate vehicle for appellate review would be an appeal to the Court of Criminal Appeals, rather than a mandamus proceeding.
 

 "It is well established that an order awarding attorney fees in relation to an underlying case is, itself, an appealable judgment.
 
 Niezer v. SouthTrust Bank,
 
 887 So.2d 919, 923 (Ala.Civ.App.2004) (‘[A]ttomey-fee matters are separate and distinct from matters going to the merits of a dispute and ... an appeal may be taken from a final judgment as to either aspect of a case.');
 
 Hunt v. NationsCredit Fin. Servs. Corp.,
 
 902 So.2d 75, 81 (Ala.Civ.App.2004) (concluding that
 
 Niezer
 
 stands for the proposition that 'an order denying an award of attorney fees that is ancillary to an earlier decision and has completely adjudicated all matters in controversy between the parties is immediately appealable’ and is consistent with the United States Supreme Court decision in
 
 Budinich v. Becton Dickinson & Co.,
 
 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988));
 
 Sparks v. Parker,
 
 368 So.2d 528 (Ala.1979) (reviewing a trial court's order establishing and administering Calhoun County's indigent-defense system by way of an appeal); C.A. Wright et al.,
 
 Federal Practice and Procedure
 
 § 3915.6 (2d ed.1992);
 
 Clark v. Johnson,
 
 278 F.3d 459 (5th Cir.2002)(holding that an order denying compensation under the federal Criminal Justice Act for services performed before a state clemency board by counsel appointed to represent a state prisoner was final and appealable, despite the fact that the order was separate from the merits of the habeas corpus proceeding). Cf.
 
 Sprague v. Ticonic Nat’l Bank,
 
 307 U.S. 161, 170, 59 S.Ct. 777, 83 L.Ed. 1184 (1939)(giving certiorari review to an attorney-fee order appealed to the lower appellate court and observing that a petition for an attorney fee in equity is ‘an independent proceeding supplemental to the original proceeding’). The delegation in § 12 — 3—9[, Ala.Code 1975,] to the Court of Criminal Appeals of jurisdiction over criminal cases involving misdemeanors and felonies necessarily and logically includes jurisdiction to review any appealable order arising out of or relating to such a case.
 

 [5]
 

 "5 The opinion in
 
 Ex parte Galanos
 
 reasoned that a declaratory-judgment proceeding would have allowed for a fully developed record against which the appellate court could review the trial court’s decision. 796 So.2d at 392. I submit, however, that if the fee-award procedures employed by a trial court do not allow for an evidentiary hearing, and the development of an evidentiary record is reasonably necessary for the proper disposition of the issues raised in a given case, then that fact itself could be the proper subject of either a mandamus review by, or an appeal to, the Court of Criminal Appeals.
 

 [6]
 

 " 6 The main opinion suggests that it is not necessary to revisit
 
 Ex parte McNabb
 
 because the Court of Criminal Appeals properly exercised jurisdiction over a dispute regarding a defendant's request for a transcript when that dispute implicated the defendant’s right to a fair trial. The rationale used by Justice John-stone, however, would give the Court of
 
 *231
 
 Criminal Appeals jurisdiction of a dispute ‘in relation to’ a criminal matter, even if the dispute did not implicate the defendant's right to a fair trial.
 

 [7]
 

 "7 I point out this practical need not to argue for what the jurisdictional lines ought to be, but to explain the wisdom of adherence to those lines. The text of Amendment No. 328 [now § 141] and of the jurisdictional statutes discussed above is sufficiently simple and straightforward so as not to admit of ambiguity requiring parol facts to understand their intent.”